The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ballance. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At all time relevant to plaintiff's claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At said time, plaintiff was employed by the defendant-employer.
3. The defendant-employer's workers' compensation insurance carrier at all times relevant to plaintiff's claims was Kemper Insurance Company.
4. If the Commission determines that the plaintiff has suffered a change of condition from an injury occurring on 25 October 1991, the parties agree that plaintiff's average weekly wage is $422.11, as established by the Form 21 agreement dated 25 November 1991.
5. Otherwise, the average weekly wage of plaintiff will be determined from the Form 22, Statement of Days Worked and Earnings of Injured Employee, which will be submitted to the Commission subsequent to the hearing.
6. On 25 October 1991, the plaintiff sustained an injury to his right shoulder by accident arising out of and in the course and scope of his employment.
7. The defendants have accepted the October, 1991 injury as compensable.
8. A Form 21 agreement was executed and approved by the Commission on 25 November 1991.
9. Plaintiff was treated by Dr. Joseph J. King of Carolina Bone and Joint from 25 October 1991 to 7 July 1993.
10. Plaintiff was treated by Drs. James R. Boatwright and Donald F. D'Alessandro from Miller Orthopedic Clinic from 9 August 1993 to the present.
11. Plaintiff was treated at Union Memorial Hospital on 1 May 1993.
12. Plaintiff was treated by Dr. Roy Strickland of Strickland Chiropractic Center from 15 July 1993 to 9 September 1993.
13. Defendants have received the Form 18 completed by plaintiff on 16 September 1993.
14. Defendants have received the Form 18 completed by plaintiff on 10 August 1993.
15. The plaintiff contends that the contested issues to be determined by the undersigned are:
 a. Whether the plaintiff has suffered a change of condition of his 25 October 1991 injury or
 b. Whether the plaintiff is suffering from an occupational disease that caused him to become disabled on 2 October 1991 or
 c. Whether the plaintiff is suffering from an occupational disease that caused him to become disabled on 1 May 1993 and again on 15 July 1993 or
 d. Whether the plaintiff was injured by an accident which arose out of and in the course and scope of his employment on 1 May 1993 and
 e. The amount of temporary total and partial due and owing to the plaintiff.
16. The defendants contend that the plaintiff be required to choose between the above-stated theories and proceed on only one ground.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff began working at Monroe Ice Fuel in May, 1990 as a route salesman. His responsibilities included transporting ice to various customers along his route, unloading the ice into the customers' boxes, collecting payment for the ice and returning payment to Monroe Ice Fuel. In the summer, plaintiff would deliver and unload approximately nine tons of ice packed in eight to eighteen pound bags, while in the winter his average was approximately six tons of ice a day. Plaintiff averaged about twenty stops per day. To remove the ice from the truck, plaintiff would pull the bags down from their stacks on the truck and, depending where the ice was to be stored, remove the ice directly from the truck into the ice box or place the ice on a cart and take it inside the store to an ice box. During the summer, plaintiff would work from 6:00 a.m. to 7:00 p.m. to service his customers.
2. On 25 October 1991, plaintiff injured his right arm and shoulder while removing an eighteen pound bag from the truck. Liability has been accepted by the defendants for this injury under I.C. File No. 175894. Plaintiff was treated and released by Dr. Joseph King. Plaintiff returned to work after this injury in late 1991 to the same pay rate. Plaintiff continued to have pain in his shoulder after he returned to work, although it did not cause him to miss any days from work or require him to seek medical treatment beyond Dr. King's continuing prescription refills.
3. The cart plaintiff uses in his job folds out to the shape of an L and the bottom of the cart has a lip to prevent water from dripping from the cart while the ice is being transported. The trucks used by plaintiff to deliver the ice have a wooden floor installed on the bed of the truck. This wooden floor created a truck bed that is approximately two inches higher than the steel bed of the truck.
4. On 1 May 1993, plaintiff went into work early and loaded up his truck. While he was lifting his hand cart into the truck, the lip of the bottom of the hand cart caught on the wooden floor. The cart jammed and plaintiff felt a sharp pop and pain in his right shoulder. Plaintiff pulled the cart back with his left hand and put it up into the truck. Plaintiff testified that his normal job routine would not include catching the lip of the cart on the wooden floor and such an event was unexpected and an interruption of his work. Plaintiff then tried to drive the truck out of the yard but was unable to shift the truck. Plaintiff came back into the yard, left a note for his employer stating he had injured his shoulder and was going to the emergency room. He proceeded to Union Memorial Hospital.
5. Plaintiff was instructed by the emergency room physicians to rest and was referred to Dr. King for further treatment. Plaintiff was out of work from 1 May to 11 May 1993. Dr. King prescribed Tylox, a narcotic for pain and limited plaintiff to one handed work until 12 May 1993. Plaintiff continued to have pain in his right shoulder and upon the advice of defendant-employer, he sought treatment at Miller Orthopedic Clinic. Plaintiff could not continue his job after 15 July 1993.
6. Dr. D'Alessandro, plaintiff's current treating physician and a shoulder specialist at Miller Orthopedic Clinic, has given plaintiff a diagnosis of glenohumeral arthritis and impingement syndrome with a partial rotator cuff tear. Dr. D'Alessandro testified that plaintiff's injury was consistent with the type of work plaintiff performed. He noted that such a diagnosis is a progressive process from repetitive use or wear of the shoulder. However, such a condition can be asymptomatic and be rendered symptomatic by a specific traumatic event, although Dr. D'Alessandro felt that plaintiff's condition arose primarily from repetitive wear. Dr. D'Alessandro spoke with plaintiff regarding his job requirements but did not document the specifics of this conversation. He categorized plaintiff's job as a repetitive, overuse position. Dr. D'Alessandro opined that plaintiff's job caused or significantly contributed to plaintiff's glenohumeral arthritis, impingement syndrome and partial rotator cuff tear and that this activity put plaintiff at a greater risk than the general public of contracting these conditions.
7. Plaintiff was initially seen by Dr. Boatwright at the Miller Orthopedic Clinic who believed that plaintiff might have a rotator cuff tear. Dr. Boatwright placed plaintiff out of work. He consulted with Dr. D'Alessandro who recommended a diagnostic arthroscopy and open decompression with distal clavicle resection. On 16 September 1993, Dr. D'Alessandro performed a diagnostic arthroscopy, open acromioplasty and distal clavicle resection.
8. After treatment by Dr. D'Alessandro, plaintiff was able to return to work with defendant-employer on 4 October 1993 in a modified position. Plaintiff has missed approximately ninety days from work due to his injury. However, plaintiff was unable to return to his part-time position as a security guard.
9. On the date plaintiff filed his Form 18, he was not aware that he had contracted an occupational disease. Plaintiff testified that he believed his injury was a reoccurrence of his 1991 injury. He was not informed that his injury was related to an occupational disease until his October, 1993 visit with Dr. D'Alessandro.
10. Plaintiff's supervisor, Mr. Gene Price, was aware that plaintiff had injured his shoulder on 1 May 1993, and prepared a Form 19 stating such on 3 May 1993. Plaintiff testified that he provided his employer with all medical records regarding his accident. Ms. Charlene Miller, the defendant-employer's Office Manager, testified that she had received all of plaintiff's medical records referring to his shoulder. She was aware that Dr. D'Alessandro stated that plaintiff had impingement syndrome and glenohumeral arthritis. She received and was aware of Dr. D'Alessandro's note that plaintiff's diagnosis was work-related. Kemper Insurance investigated plaintiff's claim and by 10 May 1993 had made a decision to deny such claim.
11. Prior to 1 May 1993, plaintiff developed glenohumeral arthritis and impingement syndrome with a partial rotator cuff. The repetitive lifting and overhead lifting that plaintiff's job required him to do played a significant causal role in the development of said condition or disease. Plaintiff's employment placed him at a greater risk of developing this disease or condition than the public in general. Prior to 1 May 1993, plaintiff's disease was not disabling.
12. Plaintiff aggravated his pre-existing occupational disease on 1 May 1993.
13. Plaintiff is a credible witness as is his account of his injury and related events.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff has contracted glenohumeral arthritis and impingement syndrome, occupational diseases arising in and out of the course of his employment with Monroe Ice Fuel Company. Said occupational diseases are characteristic of and peculiar to plaintiff's employment and plaintiff's employment placed him at a greater risk than the public at large of developing said occupational diseases. As of 1 May 1993, plaintiff's occupational diseases were not disabling. N.C. Gen. Stat. § 97-53(13).
2. On 1 May 1993, plaintiff suffered an injury to his right shoulder by accident arising out of and in the course of his employment. N.C. Gen. Stat. § 97-2(6). The catching the lip of the handcart on the back of the truck that plaintiff was loading constituted an interruption in his normal work routine and although it had happened before, this was not the usual or expected result.
3. Plaintiff's injury of 1 May 1993 significantly aggravated his pre-existing and then undiagnosed occupational disease causing a condition which was non-symptomatic and not disabling to become disabling.
4. In that the 1 May 1993 injury involved the same area of the right shoulder that plaintiff injured during his 25 October 1991 admittedly compensable injury, plaintiff arguably also aggravated a pre-existing injury. Plaintiff, therefore, proceeded on inconsistent theories. It is not necessary, however, to decide this issue in light of the above conclusions. Alternative pleading is permitted under the law.
5. As a result of his 1 May 1993 injury by accident which significantly aggravated plaintiff's glenohumeral arthritis and impingement syndrome, plaintiff was required to abstain from work and later undergo surgery. Plaintiff was temporarily and totally disabled during the period of 1 May 1993 through 11 May 1993 and 15 July 1993 through 4 October 1993, entitling him to temporary total disability compensation during said period.
6. Based on the Form 22 submitted to defendants and the additional wage information provided by plaintiff, plaintiff's average weekly wage is $309.82 providing a compensation rate of $206.56.
7. The issue of what amount of permanent partial disability, if any, that plaintiff has incurred is reserved for subsequent determination.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay compensation to the plaintiff, on account of his temporary total disability at the rate of $206.56 per week during the periods of 1 May 1993 through 11 May 1993 and 15 July 1993 through 4 October 1993. Such compensation as has accrued hereunder shall be paid in a lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury and occupational disease, including payment for the surgery performed by Dr. D'Alessandro, when the bills for the same are submitted through defendant-carrier to the Industrial Commission for approval and are approved by the Commission.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the accrued compensation benefits due under the above Award is hereby approved for plaintiff's counsel, which shall be deducted from the Award and forwarded directly to plaintiff's counsel.
4. The issue of permanent partial disability, if any, is RESERVED for subsequent determination.
5. Defendants shall pay the costs due this Commission, including an expert witness fee in the amount of $250.00 to Dr. D'Alessandro.
 S/ __________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ __________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ __________________ DOUGLAS E. BERGER DEPUTY COMMISSIONER
CMV/CNP/tmd 5/4/95